# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS AMARILLO DIVISION

| | | |
|---|---|---|
| ALLEN WALLACE and BABY WALLACE, | ) | CASE NO. |
| | ) | |
| Plaintiffs. | ) | |
| | ) | HON. |
| vs. | ) | |
| | ) | |
| CAL FARLEY'S BOYS RANCH, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

PLAINTIFFS, ALLEN WALLACE and BABY WALLACE, by and through their attorneys, DIMITRI DUBE, P.C., submit the following Complaint against DEFENDANT CAL FARLEY'S BOYS RANCH.

## JURY DEMAND

COMES NOW PLAINTIFFS and hereby make their demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiffs ALLEN WALLACE and BABY WALLACE were residents of the County of Potter, State of Texas and/or the County of Lubbock, State of Texas.

2. Defendant CAL FARLEY'S BOYS RANCH is a non-profit corporation, with a continuous and systematic place of business maintained in the City of Amarillo, County of Potter, State of Texas.

1

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5. Venue is proper in the Northern District of Texas, Amarillo Division, pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. On or about January 7, 2019, Plaintiffs began working for Defendants as house parents where they took care of children in a home provided to them by Defendants.

7. They were paid at a rate of $7.50 per hour yet were working well beyond forty hours per week and were not properly paid overtime for their work.

8. Plaintiffs routinely worked after 6 p.m. but were not paid for so doing.

9. Plaintiffs worked many days in a row without breaks or days off, despite their contract stating that they would be given three full days off.

10. At some point, Defendants were under investigation for overtime violations by the Department of Labor.

11. Defendants questioned whether they had participated in the investigation.

12. For the entirety of the time they worked for Defendants, they gave notice well in advance that their religion – Messianic Judaism – required them to miss a few days of work for the Feasts of Passover and Unleavened Bread, which took place in April and October, respectively.

13. On January 3, 2020, and in accordance with Defendants' policy, Plaintiffs requested and were permitted to take time off in April 2020 and from October 2, 2020 through October 10, 2020, to observe their religious beliefs.

14. For the next eight months, Plaintiffs were under the impression that –as had occurred in 2019 – their request for leave for the Feast of Unleavened Bread for October 2020 had been approved.

15. However, on the morning of September 29, 2020, Plaintiffs were advised via Zoom that they were being denied the time off requested in January 2020.

16. That same day in the mid-afternoon, Adrian Jackson, Defendant's Campus Director, called and advised Plaintiffs that if they left, Defendants would close their home –thus removing the children in the home – allegedly because they had no one else to work in the home.

17. Plaintiffs left the Willis home in observance of their religion on October 1, 2020.

18. On October 11, 2020, Plaintiffs returned to the Willis home to which they had been previously assigned and discovered that the children/residents were still in the home and being watched by live-in house parents.

19. However, Plaintiffs had been reassigned to the Johnson home, which was upon information and belief under investigation for allegations of abuse.

20. On October 31, 2020, Defendants' agents came to the Johnson home where Plaintiffs were working, stating that someone had reported abuse of the children in the home.

21. On November 4, 2020, an email was received from Defendant's Chief Program Officer, Michelle Maikoetter, requesting that Plaintiffs come to her office to talk.

22. On November 6, 2020, Plaintiffs were interviewed by Ms. Maikoetter regarding abuse allegations, which they did not know anything about and denied they were a part of in the short time they had been in the home.

23. The following day, Defendant's supervisor, Josh Clay, accused Plaintiff of lying to him about where the children/residents had been taken off campus, despite the fact that Plaintiff Baby Wallace had previously been told by Defendants that she did not have to resubmit a corrected travel sheet for their destination in town.

24. On November 12, 2020, Plaintiff were told to show up at the headquarters of Defendant for a 9 a.m. meeting on a day that they were not supposed to work.

25. The following day, on November 13, 2020, Defendants terminated their employment.

26. Following their termination, Plaintiffs were told that Defendants' staff had stated that Plaintiffs physically abused the children in the Johnson home, which was demonstrably false.

27. Specifically, a minor resident of the Stevens home (whose name has been omitted for privacy purposes) was told by Joni Smith and Brian Smith, employees of Defendant, that Plaintiffs were terminated because they abused children in the Johnson home.

28. Further, upon information and belief, Defendant's agents have advised acquaintance and children/residents of Defendant's homes that Plaintiffs were fired for abusing children.

29. Upon information and belief, Defendant has continued to the present time to repeat these false allegations to third parties, including to the residents at Defendant's homes, other employees of Defendant, and other third parties.

30. Following their termination, Plaintiffs filed a charge of discrimination with the TWC and the EEOC on the basis of religious discrimination.

31. On August 27, 2021, Plaintiff Allen Wallace received his notice of right to sue letter.

32. Upon information and belief, Plaintiff Baby Wallace has also had a notice of her right to sue issued by the EEOC.

33. Plaintiffs request relief as described in the Prayer for Relief below.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RELIGION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

34. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

35. At all material times, Defendant was an employer and Plaintiffs were employees covered by, and within the meaning of, Title VII, as amended.

36. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to interfere with the rights of or discriminate against an employee on the basis of their religion or their obvservance of the same.

37. A respondeat superior relationship existed because the agents of Defendant listed above worked for Defendants and had the ability to undertake or recommend tangible decisions affecting Plaintiffs and the authority to direct their daily work activity, as alleged in the statement of facts.

38. Plaintiffs observe Messianic Judaism and, as a result, are members of a protected class pursuant to Title VII.

39. Plaintiff were subjected to offensive communication and/or conduct on the basis of their membership in this protected class.

40. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiffs' rights.

41. Plaintiffs notified Defendant, through their agents, of the unwelcomed conduct and communication, and Defendant failed to remedy the unwelcomed conduct or communication.

42. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiffs' employment, resulting in Plaintiffs' termination.

43. As a proximate result of the Defendant's discriminatory actions, Plaintiffs have suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

44. As a result of those actions and consequent harms, Plaintiffs have suffered such damages in an amount to be proven at trial.

45. Plaintiffs request the relief as described in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

46. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

47. At all material times, Defendant was an employer and Plaintiffs were employees covered by, and within the meaning of, Title VII, as amended.

48. A respondeat superior relationship existed because Defendant's agents had the ability to undertake or recommend tangible decisions affecting Plaintiffs and the authority to direct all of Plaintiffs' daily work activity, as alleged in the statement of facts.

49. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to retaliate against an employee for engaging in protected activity.

50. Plaintiffs engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to, when they took off work to observe their religious beliefs.

51. Defendant, through its agents, had knowledge that Plaintiffs engaged in protected behavior because Plaintiff requested the time-off eight months prior and further met with Defendant's agents prior to leaving to inform them that they needed to take off the time that had already been approved.

52. After Plaintiffs engaged in a protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions because of that activity, as alleged in the statement of facts and herein, subjecting Plaintiffs to severe and pervasive retaliatory harassment by a supervisor, culminating in the termination of Plaintiffs.

53. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiffs' rights.

54. Plaintiffs notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

55. As a proximate result of Defendant's discriminatory actions, Plaintiffs have suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

56. As a result of those actions and consequent harms, Plaintiffs have suffered such damages in an amount to be proven at trial.

57. Plaintiffs request relief as described in the Prayer for Relief below.

## COUNT III
## DISCRIMINATION ON THE BASIS OF RELIGION IN VIOLATION OF TEXAS LAW

58. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

59. At all material times, Plaintiffs were employees, and Defendant was their employer covered by, and within the meaning of, Title 2, Subtitle A, Chapter 21 et seq. of the Texas Labor Code.

60. Plaintiffs observed the religious practices of Messianic Judaism at all times relevant to this Complaint.

61. A respondeat superior relationship existed because Defendant's agents had the ability to undertake or recommend tangible decisions affecting Plaintiffs and the authority to direct their daily work activity, as alleged in the statement of facts.

62. Defendant's conduct, as alleged herein, violated the Texas Labor Code, which makes it unlawful to discriminate against an employee on the basis of their religion.

63. The Texas Labor Codes provides that Plaintiffs are members of a protected class for the purpose of their religion.

64. Plaintiffs were discriminated against, up to and including termination, for observing their religion, in violation of the Texas Labor Code.

65. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained losses of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

66. As a result of those actions and consequent harms, Plaintiffs have suffered such damages in an amount to be proven at trial.

67. Plaintiffs request relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF TEXAS LAW

68. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

69. At all material times, Defendant was an employer and Plaintiffs were employees covered by, and within the meaning of Title 2, Subtitle A, Chapter 21 et seq. of the Texas Labor Code.

70. A respondeat superior relationship existed because Defendant's agents had the ability to undertake or recommend tangible decisions affecting Plaintiffs and the authority to direct all of Plaintiffs' daily work activity, as alleged in the statement of facts.

71. Defendant's conduct, as alleged herein, violated the Texas Labor Code which makes it unlawful to retaliate against an employee for engaging in protected activity.

72. Plaintiffs engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to, when they took off work to observe their religious beliefs.

73. Defendant, through its agents, had knowledge that Plaintiffs engaged in protected behavior because Plaintiff requested the time-off eight months prior and further met with Defendant's agents prior to leaving to inform them that they needed to take off the time that had already been approved.

74. After Plaintiffs engaged in a protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions because of that activity, as alleged in the statement of facts and herein, subjecting Plaintiffs to severe and pervasive retaliatory harassment by a supervisor, culminating in the termination of Plaintiffs.

75. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiffs' rights.

76. Plaintiffs notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

77. As a proximate result of Defendant's discriminatory actions, Plaintiffs have suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

78. As a result of those actions and consequent harms, Plaintiffs have suffered such damages in an amount to be proven at trial.

79. Plaintiffs request relief as described in the Prayer for Relief below.

## COUNT V
## VIOLATIONS OF FAIR LABOR STANDARDS ACT (MINIMUM WAGE, OVERTIME, AND RETALIATION)

80. Defendant was Plaintiffs' employer as defined by the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 302(d).

81. Plaintiffs were employees of Defendant, as defined by FLSA. 29 U.S.C. § 203(e)(1).

82. Plaintiffs were engaged in employment with Defendant, as defined by 29 U.S.C. § 203(g).

83. The burden is on Defendant to keep accurate records of the hours Plaintiffs worked and the wages they were paid.

84. At all times, Plaintiffs attended to their duties while on Defendants' premises.

85. Defendant's failure to keep proper records was intentional.

86. Further, Defendants failed to pay Plaintiffs the federal minimum hourly wage, as established in 29 U.S.C. § 206.

87. Defendants failed to pay Plaintiff the state minimum hourly wage as established by Texas law.

88. Further, Defendant failed to pay Plaintiffs the required 1 1/2 times the amount of their hourly wage for every hour worked over 40 hours per week, in violation of 29 U.S.C. § 207(a)(1).

89. Defendants' failure to pay Plaintiffs minimum wage was intentional.

90. Plaintiffs were not salaried employees which would exempt Defendant from paying them overtime wages. 29 CFR 541.602.

91. Plaintiffs were never paid more than $684 per week or $35,568.00 which would exempt Defendant from paying Plaintiff overtime wages. 29 CFR 541.

92. Plaintiffs were never paid any bonuses exempting Defendants from paying Plaintiff's overtime wages. 29 CFR 541.602(a)(3).

93. Defendant has the burden of establishing exemptions for not paying Plaintiffs' overtime wages.

94. Defendant is not exempt from paying Plaintiffs under the learned professional employee exception pursuant to 29 CFR 541.300(a).

95. Defendant is not exempt from paying Plaintiffs under the executive employee exception pursuant to 29 CFR 541.100(a).

96. Defendant is not exempt from paying Plaintiffs under the highly compensated employee exception pursuant to 29 CFR 541.601(a).

97. Defendant is not exempt from paying Plaintiff under the computer-employee exception pursuant to 29 CFR 541.400(b).

98. Defendant harassed Plaintiffs over their claims related to Defendant's failure to pay minimum wage and overtime wages, in violation 29 U.S.C. 215.

99. Defendants harassed Plaintiffs over their notice to Defendants of their awareness of their right to sue for these violations.  29 U.S.C. 215.

100.   Plaintiffs engaged in protected activity under the FSLA.

101.   Perceiving that an employee has participated in an investigation, as well as actually participating in an investigation of FLSA violations, is protected activity under the FLSA

102. Defendant suspected that Plaintiffs were engaging in this protected activity; and/or were aware that Plaintiffs had engaged in protected activity.

103. Defendant engaged in harassing, threatening, menacing, and retaliatory behavior in retaliation for Plaintiffs' protected activity, including terminating them and accusing them of child abuse.

104. Plaintiffs request damages for Defendant's violations of wage and hour law and retaliation, as described in the Prayer for Relief below.

### COUNT VI
### VIOLATIONS OF TEXAS MINIMUM WAGE ACT

105. Defendant was Plaintiffs' employer as defined by the Texas Labor Code, Title 2, Subtitle C, Chapter 62, et seq. ("Minimum Wage Act").

106. Plaintiffs were employees of Defendant, as defined by the Minimum Wage Act.

107. Plaintiffs were engaged in employment with Defendant, as defined by the Minimum Wage Act.

108. The burden is on Defendant to keep accurate records of the hours Plaintiffs worked and the wages they were paid.

109. At all times, Plaintiffs attended to their duties while on Defendants' premises.

110. Defendant's failure to keep proper records was intentional.

111. Defendants failed to pay Plaintiff the state minimum hourly wage as established by Texas law, as they worked hours that were not compensated.

112. Defendants' failure to pay Plaintiffs minimum wage was intentional.

113. No exceptions to the FLSA, as indicated in Count V above, apply to Defendant or Plaintiffs.

114. Defendant further harassed Plaintiffs over their claims related to Defendant's failure to pay minimum wage.

115. Defendants harassed Plaintiffs over their notice to Defendants of their awareness of their right to sue for these violations.

116. Plaintiffs engaged in protected activity under the Minimum Wage Act

117. Perceiving that an employee has participated in an investigation, as well as actually participating in an investigation of Texas Labor Code violations, is protected activity under the Texas Labor Code.

118. Defendant suspected that Plaintiffs were engaging in this protected activity; and/or were aware that Plaintiffs had engaged in protected activity.

119. Defendant engaged in harassing, threatening, menacing, and retaliatory behavior in retaliation for Plaintiffs' protected activity, including terminating them and accusing them of child abuse.

120. Plaintiffs request damages for Defendant's violations of law, as described in the Prayer for Relief below.

## COUNT VI
## DEFAMATION

1. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

2. As stated in the statement of facst, Defendant made false statements about Plaintiffs, stating that they had abused children in Defendant's homes, which conduct would constitute a crime.

3. That these statement were false and defamatory.

4. That Defendant and its agents – as a result of respondeat superior – knew the statements were false, had no basis to believe the statements were true, or recklessly disregarded whether the statements made were true.

5. That such conduct in accusing Plaintiffs of committing a crime constitue defamation *per se* for which damages are presumed, in an amount to be proven at trial.

6. That to the extent it is found that the statements did not constitute defamation *per se*, that Plaintiffs suffered damages in the way of loss of reputation in the community and society. in an amount to be proven at trial.

87. Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

Plaintiffs, ALLEN WALLACE and BABY WALLACE, respectfully request that this Honorable Court enter judgment against Defendant as follows, as permitted by law:

    a. Backpay, front pay, wages, benefits and fringe benefits;

    b. Compensatory damages;

    c. Equitable and declaratory relief;

    d. Attorneys fees;

    e. Costs and expenses of litigation;

    f. Payment of unpaid minimum wages;

    g. Payment of unpaid overtime wages;

    h. Interest on all overtime wages;

    i. Additional liquidated damages equal to the amount of all established damages;

j. Damages for emotional pain, suffering and humiliation associated with the allegations herein;

k. Treble Damages;

l. Exemplary Damages;

m. Punitive damages; and

n. Any other damages to which Plaintiffs are permitted under statutory or common law, both federal and state.

Dated: November 25, 2021      Respectfully Submitted,

**DIMITRI DUBE, P.C.**

/s/ Dimitri Dube
DIMITRI DUBE, ESQ.
State Bar No: 24068944
325 N. St. Paul Street
Suite 2750
Dallas, TX 75201
Tel: 469.484.5021
Fax: 214.975.2010
Email: dimitridubepc@gmail.com
*Attorneys for Plaintiffs*

15